MORGAN, &c.
vs.
WINN'S ADM'R.

---

## Morgan, &c. vs. Winn's Administrator.

Case 25.

ORD. PET.

APPEAL FROM FAYETTE CIRCUIT.

17bm233
116  733
17bm233
116  733

1. By the Code of Practice, sections 432-3-4, the death of one or all the plaintiffs in a judgment or execution does not prevent an execution from issuing thereon, but the clerk is required to endorse, on any execution which issues, the name of the personal representative.
2. If an execution be levied and the plaintiff die before a sale of the property, and in a reasonable time there is a personal representative qualified, the lien created by the levy is not lost, nor is any *sci. fa.* necessary to authorize the issue of a *venditioni exponas,* or other execution on the judgment.

[The facts of the case are given in the opinion of the court.—REP.]

*M. C. Johnson* and *Harrison & Hunt* for appellant—

The only question in the case is, what was the effect of Winn's death upon the levy of the execution in his favor, against Robards, after the levy thereof?

MORGAN, &c.
vs.
WINN'S ADM'R.

We contend that it abated the execution. We have, for this, conclusive authority. The earliest case is that of *Buckner vs. Terrill, Litt. Sel. Ca* 29, where this court, without any statement of the grounds of their opinion, in acting on an execution that had not been levied in the lifetime of the plaintiff, say that it was not abated by his death, it is not said whether the judgment had been replevied or not. But in the case of *Wagnon vs. McCoy*, 2 *Bibb*, 198, it was decided that an execution on a judgment that had not been replevied was abated by the plaintiff's death; because, otherwise, the defendant would be deprived of the advantage of replevying, or of a sale on credit, as no replevin, or sale bond could be given to a party after he was dead. In that case the execution had not been levied when the plaintiff died; but that fact was not adverted to by the court, and was wholly immaterial with reference to the grounds on which the opinion was based. In *Huey's administrator vs. Redden's hiers*, 3 *Dana*, 488, *where the execution had been levied before plaintiff's death*, this court decided, on the authority of *Wagnon vs. McCoy*, that, "as the death of the creditor in the execution deprived the debtors of the benefit of replevying the debt, the execution, *notwithstanding the levy*, should be deemed to have abated by his death." This seems conclusive upon the question.

In an earlier case, not referred to by the appellee, *Kennedy vs. Holloway's administrator*, 6 *J J. Marshall*, 321, this court had decided that as the decision in *Wagnon vs. McCoy* was on an *unlevied* execution, it did not apply to one that had been levied in plaintiff's lifetime; and that such a one did not *ipso facto* abate; that it was not *void ab initio*, but only *voidable* at the election of the defendant; that only he, and not a stranger, could take advantage of it; and that if he acquiesces till the judgment has been revived, there is then a person to whom bond may be given, and the officer may proceed to sell.

This decision evidently proceeds on a misconception of the one in *2d Bibb*. It says that in that, " the execution was abated by McCoy's death, because there remained to be done, at the time of his death, an act necessary to perfect the execution of the process;" and that "such an act is to be found in the fact that there had been no levy." But in *Wagnon vs. McCoy*, the court had expressly referred to acts to be done by the parties—not by the sheriff; to the giving of replevin or sale bonds—*not* to the making of a levy. And the common law principle referred to was, that " when any thing remained to be done by the parties necessary to perfect the execution of the process, it would *not become* "*void ab initio*," but " abate ;" that is, be thenceforward avoided.

And, it seems to us clear, that whenever, by the plaintiff's death, the right of the defendant to replevy is suspended, even for a day, the force of the execution should cease; because, by the statute, he has the right, at any and each moment before a sale, to rid himself of the lien by the exercise of this right; and a case might readily occur in which, by such suspension, he might be deprived of the right altogether, as he might be so circumstanced as to be able at that time, and at that time only, to give the requisite security. We submit that this court should be loth to establish a rule that may, at times, wholly deprive the debtor of his statutory right of replevy, for the sake of upholding an advantage that one creditor has over another, equally meritorious.

But, as we have said, the more recent case, in 3*d Dana*, 488, establishes that the plaintiff's death abates the execution.

Under either decision, however, Morgan is entitled to succeed : 1st. Because he is not a stranger, but as mortgagee a purchaser, *and as such entitled to stand* in Robards' place and insist on the abatement; and, 2d. If, according to the case in 6 *J. J. Marshall*, the execution is *voidable only* at the election of the defendant alone, he has elected to avoid it, and did

avoid it, by the petition and injunction in this case, weeks before any attempt was made to revive. The appellee does not seriously controvert that, prior to the adoption of the Code, his execution would have abated. It seems to us clear that the code only makes the right of the appellant plainer. The sections referred to—432, 433, 434—do not relate to the effect of the plaintiff's death upon an outstanding execution, but only to the mode in which it may be revived; substituting the certificate of administration, affidavit, and indorsement on the execution, for the *scire facias* and judgment of revivor. They do not affect the abatement of the execution—whether absolute or at defendant's election—which took place on plaintiff's death; but they provide that an execution may issue on the administrator's behalf, on the performance of certain acts, equivalent to revivor. They do not authorize the indorsement of an outstanding execution, for that, being abated, is dead; but the issue of a new one on behalf of the administrator.

In this case, before the steps requisite for revivor were taken, the defendant in execution had manifested his election to avoid the writ, and had done all that was in his power to enforce that election. No court being in session, he filed a petition for the quashal of the writ, and enjoined proceedings under it. An order of quashal by the court could not have been necessary to complete the avoidance of the writ, so far as to discharge the property from the lien of the levy. That avoidance, even upon the principles of the case in 6 *J. J. Marshall*, was complete upon Robards' election to avoid it; and an order was only necessary to enforce a pre-existing right—perfect, but disregarded by the sheriff and the plaintiff in execution. Upon the defendant manifesting his election, it was their duty to cease all action upon the dead execution; and the law will not aid the plaintiff in execution to obtain an advantage from disobedience to its injunctions. The execution should

be quashed, because it was dead, either immediately upon the plaintiff's death or on the defendant's election to avoid it, and no resuscitation of the levy can come from a disregard of law, and in prejudice of intervening rights.

Section 436 of the Code provides that an execution may be quashed if the personal representatives are not properly stated in the endorsement—much more if not stated at all.

The clause in the Revised Statutes, on page 316, that is referred to, viz: "A writ of *ficri facias* shall bind the estate of the defendant only from the time the same is delivered to the proper officer to execute," does not imply that it shall continue to bind it after it ceases to have vitality.

On the other hand it is enacted, (*page* 319) that any execution " may be replevied for three months, *at any time* before a sale," &c. From the 20th of September to the 31st of October, when the *venditioni exponas* issued, this right was suspended. There was no one to whom the bond could have been given, under the Code of Practice or otherwise.

This is a race between *bona fide* creditors. There is no more hardship in Winn's losing his debt, because he happened to die after the levy, than if he had died the day before he got judgment, or than there would be in Morgan's losing his, from being unable to sue earlier. In any event the money goes to a just creditor, and the court should so apply the law as to secure to the debtor the privilege of replevin, in every case and at all events.

It may be proper to mention—as the appellee has done—that after the injunction, the parties agreed that the sheriff might sell—which he has done—and that the parties should have the same rights to the *money* as they would have had to the *property*, if the injunction had been obeyed; the object being to have a sale, but to leave the rights of the parties precisely what they would have been if the sale had not taken place.

*George B. Kinkead* for appellee—

The point involved herein can hardly be considered as definitively settled by this court. No aid can be got from the English books, and probably very little from other states, to assist in settling it. The general end of the law, therefore, must be looked to for its determination.

The plaintiff below obtained judgment against Robards, and had an execution levied on his property, after which, and before a sale, and without the debt being replevied, the plaintiff died.

The plaintiff's death had hardly occurred, before the plaintiff in this court obtained from the defendant below, Robards, a mortgage covering all his property, embracing that which had been levied on in favor of Winn during his life, and also sued out an attachment on the same property. And he claims that by the death of Winn his execution abated entirely, and the levy made under it became nugatory, and that he stood as he would have done if no suit had been brought and no judgment obtained; and by setting aside Winn's execution his own attachment and mortgage must take effect.

It is claimed for Winn that no such disastrous consequences follow his death. The record shows that Winn died on the 20th day of September, 1855. Administration was taken on his estate, in Jefferson county, where he lived and died, on the 1st day of October, 1855; that the necessary affidavits were made and filed by the administrator to take out a *venditioni exponas*, on the 31st day of October, 1855.

There was an agreement, which will probably be found in the record, that the sale of the property should be made, and the proceeds held for the benefit of the party the court might think entitled to it. Every diligence has been used by the deceased party and his representative, to enforce the writs of the law.

The naked question, therefore, remains to be decided, whether the death of a plaintiff in an execu-

tion, after the same has been levied, operates to defeat the levy and destroy the lien acquired thereby. If the debt had been replevied, it is admitted that the death of the plaintiff could not have affected his interest. It has been repeatedly so decided by this court.

Two reasons are given why, in the absence of the replevy, the writ should abate:

1st. The law secures to every defendant the right to replevy his debt for three months.

2d. No execution can issue in the name of a dead man.

As to the first question, it is true, the law gives the defendant this privilege, but not in stronger terms than it gives to the plaintiff a *lien* on the goods of the defendant, after the execution comes into the hands of the officer.

" A writ of *fieri facias* shall bind the estate of the defendant only from the time the same is delivered to the proper officer to execute." (*Rev. Stat.*, 316.)

" Any execution, &c., may be replevied for three months, at any time before a sale of the property, &c." (*Ib.*, 319.)

Here are two rights secured: the one giving to the defendant the right to replevy the execution— the other the plaintiff the right of a lien. Which shall prevail?

In the case of *Buckner, &c., vs. Terrill, Litt. Sel. Ca.*, 29, this court say expressly that when the plaintiff in a *fi. fa.* dies after it has been levied, the process of execution does not abate, but a *venditioni exponas* may issue.

In the subsequent case of *Wagnon vs. McCoy's executor*, 2 *Bibb*, this court decided that if the plaintiff die after execution delivered to sheriff, but before it is levied or replevied, the execution abates.

The court in this case, which will be relied on by the plaintiff here, say: " If the judgment of the circuit court be correct, then it follows, either that the

defendant is not in such a case entitled to the privilege of replevying, or that the replevin bond may be executed to the plaintiff after he is dead. The former of these alternatives is clearly inadmissable. The law gives the privilege of replevying the debt, on demand, without making an exception of the case when the death of the plaintiff shall have happened. And such an inevitable casualty ought not to be allowed to work a wrong to defendant, by depriving him of a right which the law has secured to him. The latter alternative admits of more doubt," &c.

In *Huey's administrator vs. Redden's heirs.* 3 *Dana*, 488, this court say : " But as, according to the case of *Wagnon vs. McCoy's executor*, 2 *Bibb*, 198, the death of Huey, the creditor in the execution, deprived the debtors of the benefit of replevying the debt, the execution, notwithstanding the levy, should be deemed to have been abated by his death."

So much for the decisions of this court. The first one cited is directly with me ; the last one may be said to be against me, but much of its force is lost by the fact that it rests on an authority that does not sustain it.

By turning from these to the Code of Practice, section 432, the following provision is found : " The death of one or all the plaintiffs shall not prevent an execution being issued thereon, but on such execution the clerk shall endorse the death of such of them as are dead, and if all be dead, the names of the personal representatives or the last survivor, if the judgment passed to the personal representatives, or the names of the survivors heirs, if the judgment was for real property."

§ 433. The sheriff in acting upon an execution, endorsed as provided in the last section, shall proceed as if the surviving plaintiff or plaintiffs, or the personal representatives or heirs, were the only plaintiffs in the execution, and take sale, replevy, and forthcoming bonds accordingly.

§ —. Before making the endorsements named above, an affidavit shall be filed with the clerk, by one of the plaintiffs or personal representatives, &c.

It will be perceived by these provisions, the rights of the defendant in the execution, so much dwelt on by the court, that is, the right to replevy, is secured to him, while there is nothing to prevent the plaintiff from retaining his.

In the case in *2d Bibb* the court say the writ abates. Why? Because, otherwise the defendant could not replevy. Now, by the provisions of the Code the right to replevy continues; therefore, the writ need not abate.

Whatever may be the true ground on which the question should rest, before the Code, it seems to me to be very clear, under it, that the plaintiff does not lose his rights. The injury worked on the defendant—which is the reason why the writ abates under the law as it formerly stood—is remedied by the Code. The right to replevy remains.

I need not press on the court the injury which would arise from this act of God, and for the benefit of a stranger, if the execution should be decided to abate, while no injury can result to the defendant by not allowing it.

Every necessary step was taken, promptly, to prosecute the execution on the death of the plaintiff.

An affirmation is expected.

Judge SIMPSON delivered the opinion of the court:

June 19.

An execution in favor of Nicholas Winn, as plaintiff therein, against Lewis C. Robards, was, by the sheriff of Fayette county, levied on the defendant's property on the 5th day of September, 1855, and the plaintiff in the execution died on the 20th of the same month. The sheriff returned the execution, stating in his return that the property levied on had not been sold under the execution, because the plaintiff had died before the day of sale.

MORGAN, &c.
vs.
WINN'S ADM'R.

Joseph A. Graves having administered on the estate of the plaintiff in the execution, filed in the clerk's office from whence it had issued, an affidavit, setting forth the death of the said Nicholas Winn, the fact that he had been appointed his administrator, and accompanied the same with a copy of the order of his appointment and a certificate of his qualification. Thereupon the clerk of the court, on the 31st day of October, 1855, issued a *venditioni exponas*, directing the sheriff to sell the property levied on for the payment of the debt.

After the death of Winn, viz, on the 21st of September, 1855, *John H. Morgan*, as the creditor of Robards, sued out an attachment against the latter, which was levied on the same property upon which Winn's execution had been previously levied. And upon the 24th of the same month Robards conveyed the same property to Morgan, by a deed of mortgage, to secure the payment of the debt which he owed him.

Under this state of case a contest has arisen between Morgan and Winn's administrator, in relation to the legal effect of the levy made in the lifetime of Winn, by virtue of the execution in his favor.

In the case of *Wagnon vs. McCoy's executor*, 2 *Bibb*, 198, it was decided that an execution abates by the death of the plaintiff after it has been delivered to the sheriff, but before it has been levied or replevied. And in the case of *Huey's administrator vs. Redden's heirs*, &c., 3 *Dana*, 488, it was decided, that as, acccording to the foregoing case of *Wagnon vs. McCoy's executor*, the death of the creditor in the execution deprived the debtor of the benefit of replevying the debt, the execution, notwithstanding it may have been levied, should be deemed to have been abated by his death. But it may be remarked that in the last case nothing was decided, except that the death of the plaintiff in the execution, even after a levy had been made under it, abated it, so that a *scire facias* to have judgment of revivor in the

name of his proper representative could be maintained. But no question was made or decided in relation to the effect that the levy would have in creating a lien upon the property.

The court decided, in the case of *Kennedy vs. Holloway's administrator,* 6 *J. J. Marshall,* 321, that by the levy of an execution in the lifetime of the plaintiff, the title to the property levied on vested in the sheriff, and that it was not divested by the subsequent death of the plaintiff before the sale, although the levy in such a case was voidable, and might be avoided by the defendant in the execution whose property had been taken, but by no other person. And if he acquiesced in the levy until the judgment was revived in the name of the executor or administrator, then there would be a person in being to whom a replevin or sale bond might be legally executed, and the officer could proceed in the name of the new party to the record, to dispose of the property, the title to which was fully vested in him by the previous levy.

It appears that the only reason why an execution which had been levied in the lifetime of the plaintiff, should be deemed to have been abated by his subsequent death, is, that unless it should be allowed to have that effect, the defendant in the execution might be deprived of the advantage and right secured to him by our statutes allowing a three months' replevy of the debt, and requiring sales to be made upon credit, inasmuch as there would be no person in existence to whom either a replevin or sale bond could be executed.

Shortly after the death of Winn, and before administration on his estate had been granted, this action was commenced in the joint names of Lewis Robards and John H. Morgan, to enjoin the sheriff from selling the property on which Winn's execution had been levied, on the grounds of the death of Winn, and the transfer of the property by Robards to Morgan by a deed of mortgage. And it is con-

tended that Robards, by bringing this action, manifested his intention not to acquiesce in the levy, and that consequently the case does not come within the principle settled in *Kennedy vs. Holloway's administrator, supra.*

Under the Code of Practice, the death of one, or even of all, of the plaintiffs in a judgment, does not prevent an execution being issued thereon ; but on such execution the clerk is required to indorse the death of the plaintiff, and the name of his representative or representatives. (*Sections* 432, 433, 434.)

By this change in the law, the death of the plaintiff in the execution does not actually abate either the judgment or the execution, but merely suspends their operation until an administrator be appointed, and the clerk rendered able to indorse his name upon the execution, by an affidavit being filed in his office of the plaintiff's death, and that the person named as such is his personal representative, together with a copy of the order of his appointment and qualification. No proceeding in the nature of a *scire facias* is required—no summons issues against the defendant, nor is any order of the court necessary to enable the clerk to issue an execution on the judgment.

If, therefore, upon the death of the plaintiff in the execution, an administrator on his estate be appointed, and the steps taken which the law requires to enable the clerk to make the proper indorsement upon the execution, within a reasonable time after his death, any lien upon the defendant's property acquired by the execution being placed in the officer's hands, or being levied by him, remains in full force, and cannot be superseded by a subsequent lien, created either by the law or by the act of the defendant.

As, however, the death of the plaintiff has the effect to suspend all further proceedings on the execution until administration be granted, and the clerk rendered able to make the proper indorsement

1. By the Code of Practice, sections 432-3-4, the death of one or all the plaintiffs in a judgment or execution, does not prevent an execution from issuing thereon, but the clerk is required to endorse, on any execution which issues, the name of the personal representative.

2. If an execution be levied and the plaintiff die before a sale of the property, and in a reasonable time there is a personal representative qualified, the lien created by the levy is not lost, nor is any *sci. fa.* necessary to authorize the issue of a *venditioni exponas*, or other execution on the judgment.

upon the execution, so that the defendant may have the benefit of a sale upon credit, or the right to replevy the debt, any unreasonable delay in taking the steps necessary to authorize the sheriff to execute the writ will operate as a legal discharge of the lien acquired by the execution.

In this case, the plaintiff in the execution died on the 20th of September. In the month of October next thereafter, an administrator was appointed, the necessary affidavit and copy of the order appointing the administrator filed in the clerk's office, and such an indorsement made upon the *venditioni exponas* as the law requires. No unreasonable delay occurred in any of the proceedings, and consequently the lien acquired upon the property of the defendant, by the levy of the execution, was not lost by the death of the plaintiff; but the sheriff had the right, when the proper indorsement was made by the clerk, to proceed with the execution as if the plaintiff were still living.

Wherefore, the judgment is affirmed.